## SCHFRANEK v. BENJAMIN MOORE & CO.

District Court, S. D. New York.
Jan. 13, 1931.

Shaffer & Pierson, of New York City (Jacob H. Shaffer and Martin Roob, both of New York City, of counsel), for the motion.

Harry A. Gair, of New York City, opposed.

WOOLSEY, District Judge.

The motion to dismiss the complaint is granted.

I do not give any leave to amend because owing to the inherent situation an amendment would be futile.

I. This extremely interesting motion involves a question which in one form or an-

other has often been before the courts; namely the liability of a manufacturer of a commodity or a machine to an ultimate user thereof who has purchased the thing in question from a retail dealer, and, consequently, is not in direct contract privity with the manufacturer but has suffered injury due to a defect in the manufactured article.

II. The facts, which on a motion of this kind have to be taken as admitted, are as follows:

The plaintiff purchased from a retail dealer a package of a commodity used in connection with wall and ceiling decoration and sold in powder form under the tradename of Muresco.

The complaint alleges: That the defendant knew that the packages of Muresco put up and sold by it were intended for ultimate use by painters and decorators, and that the seal which the dealer placed on the package would ordinarily not be broken until the package reached such ultimate user; that the sale of Muresco to retail dealers was for the purpose of resale to such ultimate users; that the plaintiff purchased a package of Muresco; that it was sold to the plaintiff by a retailer of such commodities on the 9th of February, 1930; and that on the same day when the plaintiff was in the act of pouring out some of the powder from the package and had his hand in the package for the purpose of stirring the contents, which he alleges is the ordinary and normal method followed to enable the user of the product properly to manipulate it, his hand was cut by some glass which was intermixed with the Muresco powder.

It is contended as a conclusion that the injury above detailed was due to the negligence of the defendant in the preparation and manufacture of the Muresco, in that it did not properly inspect the powder before it was put up in the sealed packages in which it reached the retail trade.

As a result of his injuries, the plaintiff claims he suffered a loss of certain parts of his hand, and seeks compensation in the sum of $75,000.

III. I have given the interesting question here involved most careful consideration, and I think, after a careful reading of the best considered cases dealing with manufacturers' liability in circumstances similar to those here found, that the cases may be summarized by saying that what I may properly call their lowest common denominator is found by asking the question whether the probable normal and appropriate use to which the thing in question is intended by the manufacturer to be put would involve injury to its user, if it is wrongfully compounded or negligently inspected.

The manufacturer is properly held to a duty to foresee the probable results of such normal use, but he does not have to foresee the possible casual results of a user which departs from the normal.

The zone of the possible in casualties is practically limitless.

Almost anything in the way of an accident is possible. Fully to realize such possibilities usually requires much reflection after the event.

The zone of the probable, however, is very much narrower, and that is the zone with which tort liability is concerned, and a survey of it involves the exercise of reasonable foresight only.

Consequently, if a thing has danger implicit in it, as a poison which is to be used for medicine, or has danger almost necessarily involved as a badly constructed motorcar or piece of machinery, the manufacturer is held to liability for failure to label or mix the medicines correctly, Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, or failure adequately to inspect the motorcar or the machinery. Huset v. J. I. Case Threshing Machine Company (C. C. A. 8) 120 F. 865, 61 L. R. A. 303; MacPherson v. Buick Motor Co., 217 N. Y. 382, 389, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440; Johnson v. Cadillac Motor Car Co. (C. C. A. 2) 261 F. 878, 8 A. L. R. 1023, which changed the rule laid down in the same case on an earlier appeal (C. C. A. 2) 221 F. 801, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581, and followed the MacPherson Case which had been decided in the meantime.

But when a thing is not dangerous per se and does not, in order that the ultimate user may get the benefit of it, have to be used in any way in which the alleged defect would probably cause injury, the ultimate user buying it from a retail dealer cannot maintain an action against the manufacturer, unless, of course, he can make out a case of a willful attempt to trap him; an effort so rare in ordinary commercial matters as to be negligible.

Facts are so multifarious that a detailed study of all the authorities cited to me would be unprofitable.

I think that the cases cited which come nearest to the present case are Slattery v.

Colgate, 25 R. I. 220, 55 A. 639 (1903); Hasbrouck v. Armour & Co., 139 Wis. 357, 121 N. W. 157, 23 L. R. A. (N. S.) 876, in both of which the complaint was dismissed on demurrer, and Field v. Empire Case Goods Co., 179 App. Div. 253, 166 N. Y. S. 509, in which a judgment for the plaintiff on the pleadings was reversed.

In the Slattery Case, 25 R. I. 220, 55 A. 639, the plaintiff, a barber, sued Colgate & Co. because soap, which he had bought from a dealer in barbers' supplies, contained an excessive amount of alkali, whereby the faces of his customers were burned, resulting in a loss of trade. In a per curiam opinion, the Court of Appeals of Rhode Island said:

"The whole subject of the responsibility of a manufacturer to persons using his products, on account of defects therein, has been recently fully discussed by this court in McCaffrey v. Mossberg & Granville Mfg. Co., 23 R. I. 381, 50 A. 651 [55 L. R. A. 822, 91 Am. St. Rep. 637]."

"We think the case can only be sustained if it can be brought within the second class referred to there—the article involved not being an inherently dangerous one, but one which may have become so by the acts or neglect of the manufacturer—in which case he is not liable unless he knows of the defect, and practices deceit in exposing the defective product for sale. Alkali of some kind is a necessary ingredient of soap, and it is no deceit to include it in the manufacture of the article for the market. It is only the excess of alkali that can render the compound hurtful to the human skin. Unless the defendants knew of this excess, they cannot be held liable. It is not alleged that they had this knowledge—only that they were negligent."

In Hasbrouck v. Armour & Co., 139 Wis. 357, 121 N. W. 157, 23 L. R. A. (N. S.) 876, decided in 1909, the Court held that a manufacturer of soap was not liable to the ultimate consumer because the soap contained a needle or small piece of steel with sharp ends embedded in it.

Referring with special approval to the principles laid down by Judge Sanborn in Huset v. J. I. Case Threshing Machine Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303, Mr. Justice Timlin said, at page 362 of 139 Wis., 121 N. W. 157, 159, 23 L. R. A. (N. S.) 876: "Negligence in law consists in the omission or inadvertently wrongful exercise of a duty, which omission or exercise is the legal cause of damage to another. * * * The duty is, not to never fail, but not to fail under such circumstances that a reasonably

prudent person might infer injury, as a natural and ordinary consequence of such failure, to one to whom the duty is due."

In Field v. Empire Case Goods Co., 179 App. Div. 253, 166 N. Y. S. 509, the plaintiff sought to recover from the defendant, who was a manufacturer of folding beds, for the negligent construction of a folding bed purchased from R. H. Macy & Co., an intermediate retail dealer.

It was alleged that, owing to the negligence of the manufacturer in the making of the bed, certain strips of wood fastened to the inner surface of the sides had given away and thrown the plaintiff to the floor.

The court there said at page 257, of 179 App. Div., 166 N. Y. S. 509, 512, after referring to the MacPherson Case above cited: "It is clear therefore that an action cannot be maintained upon the facts alleged in the complaint, which do not remove the case from the general rule that an action for negligence cannot be maintained by a third person against the manufacturer of an article not in and of itself imminently and inherently dangerous. An ordinary bed is not an article that is reasonably certain to place life and limb in peril when negligently constructed, or which of itself, in the use to which it is intended to be put, gives any warning of dangerous consequences attending to its use, and the manufacturer is not charged with knowledge of danger in its contemplated use, 'not merely possible, but probable.' An ordinary wooden bed is such a common article and in such universal use, its manner of construction and method of use having remained the same for generations, that we may take judicial notice of its construction, especially when aided by the allegations of the sixth and seventh subdivisions of the complaint, and of the fact that the strips of wood on the inner sides of sidepieces which form a support for slats laid crosswise, but a short distance from the floor, sometimes give way. The drop to the floor, however, is so slight, and the body of the occupant usually so well surrounded by protecting bedding, that bodily injuries cannot be reasonably expected to result therefrom."

■ I think that the plaintiff's case here is weaker than any of the three cases just cited because not only does the plaintiff here fail to allege any scienter against the defendant, as was held necessary in the Colgate Case, but he alleges affirmatively the use of his finger in stirring the Muresco, the substance involved in this case. This was a method of taking the Muresco out of its wrapper,

which, while it may not constitute negligence on the plaintiff's part, such as was found in the Colgate Case, nevertheless does not seem to me to be a contingency which it was the defendant's duty to foresee, or against which the defendant was bound to guard the ultimate users of its product.

Therefore, I hold, that the plaintiff has not and cannot from the nature of his case allege the necessary incidents of liability on the defendant's part which I have suggested above.

The plaintiff has wholly failed to show that the occurrence of which he complains was an expectable vicissitude, to borrow an apt phrase from a short unreported memorandum opinion by the late Judge Edward B. Thomas, formerly a Judge of the Eastern District of New York, who was, in my opinion, one of the really great masters of negligence law.

For the reasons above stated, an order providing for judgment dismissing the complaint herein with costs may be presented to me for signature on two days' notice.