Hillman, J.
This case arises out of the purchase of land (3.35 Acres) and a building thereon (7,200 sq. ft.), located at 175 Boston Road, Route 30, Southboro, Massachusetts (the “Premises”). Plaintiffs commenced this action to recover damages from defendant’s allegedly fraudulent representations regarding the condition of the Premises. Plaintiffs contend that during the negotiations and leading up to the sale, defendant, through his agents and employees, fraudulently represented to plaintiffs that all of the equipment, including mechanical and electrical, the well, and the septic system were in satisfactory working order.
In addition, plaintiffs seek damages for defendant’s allegedly unfair and deceptive acts in violation of G.L.c. 93A, §2. After a trial, without a jury, and based upon all the credible evidence, the court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
The defendant, Lewis F. Horton, Trustee of the MWS Really Trust, purchased the Premises in 1977 to bo used by his corporation. His corporation operated out of the Premises in mid-1980s. During this time, the septic system at the Premises was pumped out twice in 1986, three times in 1987, and four times in 1988. The increase in frequency of the need to pump out the septic system was attributed to the increase in the number of employees working out of the Premises.
From late 1988 to late 1989, the Premises were occupied by a business called Mark’s Moving. Thereafter, the Premises remained vacant. While the Premises were vacant, in December 1989 the pipes at the Premises froze and defendant sent a plumber to the Premises to make repairs.
In May 1991, plaintiff, Terrence C. Thoman, and defendant signed a Purchase and Sale Agreement which incorporated the terms of an attached Addendum. Clause 36 of the Addendum to the Purchase and Sale Agreement provided, “(t]he Sale is subject to all of the equipment; including mechanical, electrical, the well and septic being in satisfactory working order at the time of closing.”
On August 14, 1991 the deed to the Premises was delivered to plaintiff in exchange for three hundred eighiy-five thousand dollars ($385,000). Plaintiffs company occupied the Premises beginning in November 1991. Within several weeks of its occupancy, plaintiff allegedly discovered problems with the pipes that were previously frozen, as well as problems with the smoke detectors and septic system.
Since plaintiffs occupation of the Premises, the septic system has been pumped out approximately once or twice a year, for a total of five times (in August 1992, March 1993, February 1994, September 1994, September 1995). Also, bottled water is delivered to the Premises because plaintiffs employees prefer its taste over the taste of tap water.
RULINGS OF LAW
1. The Misrepresentation Claim
It is settled that a “claim for misrepresentation requires that the plaintiff show a false statement of material fact made to induce the plaintiff to act and the reliance on the false statement by the plaintiff to his detriment.” McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995). If any one of the necessary elements is absent, the defendant will prevail. See Newhall v. Ward Baking Co., 240 Mass. 434 (1922).
To sustain a claim of misrepresentation, the first requirement is that the representation made must be false. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991). Plaintiff alleges that defendant’s representations in clause 36 of the Addendum were false because some of the equipment, the well, and the septic system were not in satisfactory working order. Specifically, plaintiff contends that at the time of sale the septic system, the pipes and the smoke detectors were in unsatisfactory working condition and therefore defendant’s representation in clause 36 was false. The majority of the testimony and plaintiffs case concerned the condition of the septic system.
Plaintiff claims that the septic system on the Premises was not working in satisfactory order. In support of this claim, plaintiff testified that since he has occupied the Premises the septic system overflows and needs pumping approximately every six months. In plaintiffs opinion this constitutes a working condition that is unsatisfactory. There was testimony, however, from an employee of the septic pumping company that pumping a septic system once or twice a year is not abnormal.
In contrast, the defendant maintains that the septic system was working in satisfactory order. For example, defendant testified that he was in the practice of regularly pumping out the septic system for his home on Cape Cod, and it was his belief that septic systems *730 require pumping on a regular basis. This court finds that plaintiff has not met his burden of demonstrating that the defendant’s representation of the septic system as being in working condition was a false representation. Certainly the septic system was not suited for the use that the plaintiff had in mind since its capacity was small but it was a functional system.
Plaintiff also alleges that after he took title to the Premises it was discovered that the pipes in the building necessitated repair and the use of bottled drinking water. As was the case with the septic system, plaintiff, prior to accepting the deed to the Premises, did not do any inspection as to the condition of the pipes. There was testimony that the water has never been tested, and so plaintiff has not established that the water was not safe for consumption. Plaintiff has not met his burden of demonstrating that the pipes/water were not satisfactory.
Lastly, plaintiff contends that the smoke detectors were not in satisfactory working order. There was testimony that there were approximately fifteen (15) smoke detectors located throughout the building which were linked electronically to a master panel. The master panel was missing when plaintiff assumed ownership of the Premises. Plaintiff did not provide testimony or other evidence that the master panel was present when he initially viewed the Premises, or that the parties discussed the status of the smoke detectors when negotiating for the sale of the Premises. Defendant offered testimony that smoke detectors are not required to be in working order at the time of sale for commercial buildings, and therefore, he was not under any obligation to provide plaintiff with smoke detectors in satisfactory working order. “Nondisclosure can be actionable only where there is a ‘duty’ to disclose." Greenery Rehabilitation Group v. Antaramian, 36 Mass.App.Ct. 73, 78 (1994) (holding no duty to disclose when agreement is between sophisticated businessmen active in real estate transactions).
Therefore, this court finds that plaintiff has not sustained his burden of demonstrating the representation that the equipment, the well, and the septic system were not in satisfactory working order was a false representation.
Even assuming arguendo that defendant’s representation was false, plaintiff must also show that the misrepresentation was “material.” A representation is material if “a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question.” Rogen v. Rikon Corp., 361 F.2d 260, 266 (1st Cir. 1966).
On occasion, statements regarding the condition of the septic system have been found to be material. See Zimmerman, 31 Mass.App.Ct. at 79. In Zimmerman, there was evidence that the asking price was calculated in large part on the cost of a septic system overhaul, and that during negotiations the parties allocated the cost of correcting the system. Id. Here, no evidence, other than clause 36 of the Addendum, was introduced to demonstrate that the parties discussed the condition of the septic system. Indeed, there was testimony to the effect that plaintiff never inspected the condition of the Premises, or had the smoke detector and/or water tested, even though the right to inspect was reserved to plaintiff in the purchase and sale agreement. Consequently, plaintiff has not demonstrated that the condition of the septic system was a material consideration in arriving at a purchase price, or in purchasing the Premises.
From the foregoing, it is clear that even if this court were persuaded that the defendant falsely represented the condition of the property, plaintiff has not shown the misrepresentation was material to the sale of the property. Thus, plaintiff cannot make out a prima facie case for misrepresentation, and so the defendant will prevail on the claim for misrepresentation. See New-hall v. Ward Baking Co., supra.
2. The c. 93A Claim
Failure to disclose to a buyer a fact that might have influenced the buyer to refrain from the purchase, can amount to a violation of G.L.c. 93A, §2, as interpreted in 940 Code Mass. Regs. §3.16(2) (1986). But, “[t]here is no liability for failing to disclose what a person does not know.” Underwood v. Risman, 414 Mass. 96, 100 (1993).
Whether the transaction takes place in a “business context” must be determined from the facts of each case, and in each case the court must examine the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties. Begelfer v. Negarian, 381 Mass. 177, 190-91 (1977). In the circumstances here, where the Premises was a commercial property sold between business people and the transaction was motivated by business reasons, this was clearly a commercial transaction falling under §11. See Greenery Rehab. v. Antaramian, 36 Mass.App.Ct. at 78.
According to §11 the unfair act or practice alleged must attain “a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). The “circumstances of the entire transaction including the knowledge and motives of the parties” may be relevant in determining liability under c. 93A. Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 196 (1987).
In the circumstances here, this court does not find any behavior by defendant that sinks to the level of “rascality” required by §11 of the statute, and so plaintiff is not entitled to damages or the requested attorney fees and costs.
ORDER
It is therefore ORDERED that judgment enter for defendant.